UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-CV-00313-RJC-DCK

LEILONNI DAVIS, ASHLEY SAFRIT, and )
LAUREN WILSON, on behalf of )
themselves and all others similarly )
situated, )
 )
        Plaintiffs, )      <u>ORDER</u>
 )
        v. )
 )
TMC RESTAURANT OF CHARLOTTE, )
LLC d/b/a THE MEN'S CLUB, )
 )
        Defendant. )

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss or Stay in Favor of Arbitration, (Doc. No. 11); the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 20); Defendant's Objections, (Doc. No. 21); and Plaintiffs' Response to Defendant's Objections, (Doc. No. 24).

I.    BACKGROUND

Plaintiffs Leilonni Davis ("Davis"), Ashley Safrit ("Safrit"), and Lauren Wilson ("Wilson" and collectively with Davis and Safrit, "Plaintiffs") are former servers or bartenders at Defendant TMC Restaurant of Charlotte, LLC d/b/a The Men's Club ("Defendant"). (Doc. No. 11-3, at ¶¶ 4–6.) Plaintiffs filed this putative class action against Defendant alleging violations of the Fair Labor Standards Act, the North Carolina Wage and Hour Act, and 26 U.S.C. § 7434. (Doc. No. 1, at 12–13.) Defendant answered by filing the instant Motion to Dismiss or Stay in Favor of Arbitration

contending that Plaintiffs entered into an Arbitration Agreement and Waiver of Class/Collective Actions ("Arbitration Agreement") with Defendant that requires Plaintiffs' claims to be resolved through arbitration. (Doc. No. 11, ¶ 4.)

Plaintiffs conceded that Safrit and Wilson entered into the Arbitration Agreement with Defendant and, accordingly, the Magistrate Judge recommended that their claims be stayed pending arbitration. (Doc. No. 16, at 1; Doc. No. 20: M&R, at 4.) However, the Magistrate Judge found that Davis did not enter into the Arbitration Agreement with Defendant and recommended that Defendant's motion be denied as to Davis's claims. (M&R, at 7–8.)

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. at § 636(b)(1); Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

## III. DISCUSSION

Defendant objects to the M&R on three grounds. First, Defendant contends that the arbitrator must decide whether an arbitration agreement between Davis and Defendant exists because they validly delegated this issue to the arbitrator. (Doc. No. 21, at 1–2.) Second, Defendant contends that it established that Davis agreed to arbitrate her claims against Defendant. (Doc. No. 21, at 2.) Third and last,

2

Defendant contends that if the Court finds that Defendant has not proven that Davis agreed to arbitrate her claims, Defendant is entitled to a jury trial on the issue of whether an agreement to arbitrate exists. (Doc. No. 21, at 2.)

A. Framework Under the FAA

The parties agree that the Federal Arbitration Act ("FAA") applies to the Arbitration Agreement. "The [FAA] provides that any written provision to resolve by arbitration a controversy arising pursuant to a contract involving commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Klopfer v. Queens Gap Mt., LLC, 816 F. Supp. 2d 281, 286 (W.D.N.C. 2011) (quoting 9 U.S.C. § 2). "Under § 4, a party aggrieved by the failure of another party to arbitrate under a written agreement for arbitration may petition a federal court for an order directing that such arbitration proceed in the manner provided for in such agreement." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68 (2010) (quotation marks omitted).

When considering a motion to compel arbitration, the court must first determine whether the court or the arbitrator decides issues of arbitrability—that is, whether an agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement. Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 101 (4th Cir. 2012). Courts presume that the parties intended for the court, not the arbitrator, to decide issues of arbitrability. Rock-Tenn Co. v. United Paperworkers Int'l Union, 184 F.3d 330, 335 (4th Cir. 1999). This presumption can be rebutted, however, by clear and

3

unmistakable evidence that the parties agreed that the arbitrator would determine arbitrability. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Such an agreement to arbitrate arbitrability is often referred to as a "delegation provision." See Rent-A-Center, 561 U.S. 63.

If the court concludes that the court is to decide arbitrability issues, then the court must first determine whether an agreement to arbitrate exists between the parties. Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001). If the court finds that such an agreement exists, then the court must next determine whether the specific dispute falls within the scope of the arbitration agreement. Id. "A court may compel arbitration of a particular dispute only when the parties have agreed to arbitrate their disputes and the scope of the parties' agreement permits resolution of the dispute at issue." Muriithi v. Shuttle Express, Inc., 712 F.3d 173, 179 (4th Cir. 2013). In so deciding, the court is to apply the standard applicable to a motion for summary judgment—"the Court should compel arbitration [only] 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Adams v. Citicorp Credit Servs., 93 F. Supp. 3d 441, 445 (M.D.N.C. 2015) (quoting Fed. R. Civ. P. 56(a)).

### B. The Court Must Decide Whether an Arbitration Agreement Was Formed

Defendant argues that the arbitrator must decide whether an arbitration agreement was formed because by incorporating the rules of the American Arbitration Association ("AAA") into the Arbitration Agreement, Defendant and Davis delegated issues of arbitrability to the arbitrator. (Doc. No. 21, at 10–13.)

4

Defendant is correct that when the parties' agreement delegates arbitrability issues to the arbitrator, the Court is without power to decide arbitrability issues—the arbitrator must determine issues regarding the validity, enforceability, or scope of the arbitration agreement, including its delegation provision. Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019). At the same time, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." Granite Rock Co. v. Int'l Bd. of Teamsters, 561 U.S. 287, 296 (2010). "Therefore, whether a party formed an agreement to arbitrate, including whether it agreed to arbitrate arbitrability, is a question for the court to resolve." Berkeley Cty. Sch. Dist. v. HUB Int'l Ltd., 363 F. Supp. 3d 632, 646 (D.S.C. 2019).

This is exactly the dispute in this case: Davis does not challenge the validity or enforceability of the Arbitration Agreement; rather, Davis contends that she never entered into—or formed—the Arbitration Agreement with Defendant. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 n.1 (2006) ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded."); Berkeley Cty. Sch. Dist., 363 F. Supp. 3d at 641 ("The issue of whether an arbitration clause is valid under § 2 of the FAA is a different issue from whether the parties ever formed an agreement to arbitrate."); Nat'l Fed'n of the Blind v. Container Store, Inc., 904 F.3d 70, 80 (1st Cir. 2018) ("Pursuant to established Supreme Court precedent, however, there's an important distinction between arguments challenging the *validity* of an agreement and those challenging an agreement's *formation*." (emphasis in original).) Therefore,

5

notwithstanding the delegation provision in the Arbitration Agreement, the Court must decide whether Davis entered into the Arbitration Agreement with Defendant. See Granite Rock Co., 561 U.S. at 299 (stating that courts should order arbitration only when the court is satisfied that "formation of the parties' arbitration agreement" is not in issue); Berkeley Cty. Sch. Dist., 363 F. Supp. 3d at 646 ("[R]egardless of whether a delegation provision exists, it is always within the court's province to determine whether an agreement was *formed* in the first place." (emphasis in original)); Edwards v. DoorDash, Inc., 888 F.3d 738, 744 (8th Cir. 2018) ("Arguments that an agreement to arbitrate was never formed, though, are to be heard by the court even where a delegation clause exists.").

### C. No Arbitration Agreement Between Davis and Defendant Was Formed

In determining whether the parties entered into an agreement to arbitrate, courts apply ordinary state law principles that govern the formation of contracts. Noohi v. Toll Bros., 708 F.3d 599, 607 (4th Cir. 2013). Under North Carolina law, "[i]t is essential to the formation of any contract that there be mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." Creech v. Melnik, 495 S.E.2d 907, 911–12 (N.C. 1998) (quotation marks omitted). "Ordinarily one party, by making an offer, assents in advance; the other, upon learning of the offer, assents by accepting it and thereby forms the contract." Schwarz v. St. Jude Med., Inc., 802 S.E.2d 783, 789 (N.C. Ct. App. 2017) (quoting Restatement (Second) of Contracts § 23 cmt. a).

The record evidence establishes that on August 26, 2012, Defendant held an employee meeting at which managers distributed copies of the Arbitration Agreement

6

to all employees at the meeting. (Doc. No. 11-3, ¶ 8; Doc. No. 19-2, ¶ 9.) At this meeting, Defendant's General Manager and Office Manager explained to all employees that entering into the Arbitration Agreement with Defendant was a condition of continued employment with Defendant. (Doc. No. 11-3, ¶ 8; Doc. No. 19-2, ¶ 10.) All employees were informed of the requirement that they return a signed copy of the Arbitration Agreement to Defendant. (Doc. No. 11-3, ¶ 8; Doc. No. 19-2, ¶¶ 11–12.) Employees were permitted to sign the Arbitration Agreement at the meeting or take it home to review it or have it reviewed by a third party. (Doc. No. 11-3, ¶ 8; Doc. No. 19-2, ¶ 11.) Approximately forty-six employees attended the August 2012 meeting. (Doc. No. 19-3, ¶ 8.) Of these forty-six employees, forty-one employees signed the Arbitration Agreement and returned it to Defendant. (Doc. No. 19-3, ¶ 8.) Four employees who did not sign the Arbitration Agreement left their employment within nine months of the August 2012 meeting. (Doc. No. 19-3, ¶ 8.) The record evidence is undisputed that Davis did not sign the Arbitration Agreement. (Doc. No. 11-3, ¶ 15; Doc. No. 16-1, ¶ 4.)

Defendant argues that, notwithstanding Davis's failure to sign and return the Arbitration Agreement, the evidence establishes that Davis assented to the Arbitration Agreement because she was present at the August 2012 meeting at which Defendant introduced the Arbitration Agreement, distributed copies thereof to all employees, and informed all employees that they were required to sign and return the Arbitration Agreement in order to continue their employment with Defendant, and Davis continued her employment after this meeting. (Doc. No. 21, at 18.) In so

7

arguing, Defendant relies principally on Hightower v. GMRI, Inc., 272 F.3d 239 (4th Cir. 2001) and Davis v. BSH Home Appliances Corp., No. 4:15-cv-103, 2016 U.S. Dist. LEXIS 65500 (E.D.N.C. May 18, 2016), which in turn relied on Howard v. Oakwood Homes Corp., 516 S.E.2d 879 (N.C. Ct. App. 1999).

In Howard, defendant-employer implemented a dispute resolution program ("DRP") effective May 1, 1997 that required defendant and its employees to arbitrate a variety of employment disputes. 516 S.E.2d at 880. Prior to the effective date of the DRP, defendant mailed to all employees, including plaintiff, a copy of the DRP and a memorandum stating that defendant and the employee would be bound by the DRP, and the employee's decision to continue employment with defendant would constitute an agreement to be bound by the DRP's terms. Id. Thereafter, plaintiff continued her employment with defendant. Id. at 882. The court concluded that plaintiff evidenced her mutual assent to the DRP by continuing her employment with defendant with actual notice that the DRP would be mutually effective May 1, 1997. Id.

The facts of Howard differ from the facts of this case in critical respects. In Howard, the DRP became effective on a date certain, and defendant informed employees that by continuing employment with defendant, they were agreeing to be bound by the DRP's terms. Here, however, there was no date certain on which the Arbitration Agreement's terms became effective. (Doc. No. 11-3, ¶ 12, Ex. A.) Rather, Defendant distributed copies of the Arbitration Agreement to employees and permitted them the opportunity to take it home and have it reviewed before signing

8

and returning it to Defendant.  (Doc. No. 11-3, ¶ 8; Doc. No. 19-2, ¶¶ 10–11.)  Further, unlike the defendant in <u>Howard</u>, Defendant did not inform employees that by continuing with their employment, they were agreeing to be bound by the terms of the Arbitration Agreement.  Instead, Defendant told employees that they "were required to enter into the Arbitration Agreements with [Defendant]" and "complete and return a copy to [Defendant] in order to continue working at [Defendant]." (Doc. No. 19-2, ¶¶ 10, 12.)  While the DRP in <u>Howard</u> was a company-wide policy that went into effect on a specific date, Defendant here chose to enter into separate Arbitration Agreements with each employee.  Indeed, the Arbitration Agreement states that the parties agree to the terms thereof "[b]y their signatures below," and Defendant countersigned all forty-one Arbitration Agreements it received from its employees. (Doc. No. 19-3, Ex. B.)

Similar to <u>Howard</u>, in <u>Hightower</u>, defendant-employer implemented a DRP effective August 3, 1998 that required defendant and its employees to arbitrate a variety of employment disputes.  272 F.3d at 240–41.  Plaintiff-employee attended a DRP meeting and signed an attendance sheet acknowledging that he received the DRP materials.  <u>Id.</u> at 241.  Plaintiff was responsible for informing employees that by continuing to work after the August 3, 1998 effective date of the DRP, they were accepting the terms of the DRP.  <u>Id.</u>  Plaintiff continued to work after the DRP effective date.  <u>Id.</u> at 242.  Accordingly, as in <u>Howard</u>, the Fourth Circuit held that plaintiff assented to the DRP.  <u>Id.</u> at 243.

9

Hightower presents the same critical factual differences as Howard: here, unlike in Hightower, there was no date certain on which the Arbitration Agreement's terms became effective, and Davis was not informed that by continuing employment, she was accepting the Arbitration Agreement's terms—instead, she was informed that signing and returning the Arbitration Agreement was a condition of continued employment.

In Davis, defendant-employer promulgated a DRP similar to those in Howard and Hightower. 2016 U.S. Dist. LEXIS 65500, at *2. Defendant required each new employee to agree to the DRP's terms as a condition of employment and required the employee to sign a signature form acknowledging receipt of the DRP, which plaintiff-employee did. Id. at *13. The court found that plaintiff assented to the DRP by signing the form acknowledging receipt of the DRP and continuing his employment. Id. at *13–14.

The facts of this case are distinguishable from those in Davis because here, Defendant informed Davis that she was required to sign and return the Arbitration Agreement to Defendant in order to continue her employment, and it is undisputed that she did not do so. In addition, unlike the plaintiff in Davis, who manifested his assent to the DRP by signing a form acknowledging receipt of the DRP prior to continuing his employment, here, Davis did not manifest assent to the Arbitration Agreement prior to, or after, continuing her employment. Davis's failure to enter into the Arbitration Agreement would have been a valid basis for Defendant to end Davis's employment, but Davis did not assent to the terms of the Arbitration Agreement

10

merely by continuing her employment. The fact that Defendant informed all employees that they were required to sign and return the Arbitration Agreement—and Defendant did in fact receive and countersign forty-one separate Arbitration Agreements—is further evidence that the parties contemplated an executed Arbitration Agreement for each employee, including Davis.

Therefore, the Court concludes that Davis did not assent to the terms of the Arbitration Agreement.

### D. Defendant Is Not Entitled to a Jury Trial

In the alternative, Defendant argues that the evidence that Davis attended the August 2012 meeting at which employees were given copies of the Arbitration Agreement and informed that entering into the Arbitration Agreement was a condition of continued employment is sufficient to create a genuine dispute of material fact as to whether Davis assented to the Arbitration Agreement. (Doc. No. 21, at 22–24.)

"[T]o obtain a jury trial, the parties must show genuine issues of material fact regarding the existence of an agreement to arbitrate." Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 85 (4th Cir. 2016). "Not just any factual dispute will do. Rather, the party requesting a jury trial under Section 4 [of the FAA] must provide sufficient evidence in support of its claims such that a reasonable jury could return a favorable verdict under applicable law." Chorley Enters. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015).

As discussed above, Defendant's only evidence that Davis assented to the terms of the Arbitration Agreement is that she attended the August 2012 meeting and thereafter continued her employment. Defendant informed all employees that they were required to sign and return the Arbitration Agreement to Defendant in order to continue their employment. Forty-one of the forty-six employees who attended the meeting signed and returned the Arbitration Agreement to Defendant, and Defendant countersigned all forty-one agreements. Four of the five employees who did not sign and return the Arbitration Agreement to Defendant left their employment within nine months after the August 2012 meeting. Davis did not sign the Arbitration Agreement. In light of the foregoing, Davis's attendance at the August 2012 meeting and continued employment with Defendant is insufficient to create a genuine dispute as to whether Davis agreed to the terms of the Arbitration Agreement. Therefore, Defendant is not entitled to a jury trial on the existence of an agreement to arbitrate.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss or Stay in Favor of Arbitration, (Doc. No. 11), is **GRANTED in part** and **DENIED in part**. Specifically, the Court **GRANTS** the motion as to the claims of Plaintiffs Ashley Safrit and Lauren Wilson, and these claims are stayed pending arbitration. The Court **DENIES** the motion as to the claims of Plaintiff Leilonni Davis.

Signed: September 18, 2019

Robert J. Conrad, Jr.
United States District Judge